NOT RECOMMENDED FOR FULL-TEXT PUBLICATION
File Name: 09a0748n.06

Nos. 08-6374, 09-5047

**FILED**
NOV 20, 2009
LEONARD GREEN, Clerk

UNITED STATES COURT OF APPEALS
FOR THE SIXTH CIRCUIT

| | | |
|---|---|---|
| UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff-Appellee, | ) | ON APPEAL FROM THE |
| | ) | UNITED STATES DISTRICT |
| v. | ) | COURT FOR THE WESTERN |
| | ) | DISTRICT OF KENTUCKY |
| ANTONIO GOINS; WILLIAM FREEMAN, | ) | |
| | ) | |
| Defendants-Appellants. | ) | |
| | ) | |

BEFORE:  BOGGS, ROGERS, and WHITE, Circuit Judges.

**ROGERS, Circuit Judge.**  In these consolidated cases, two criminal defendants seek to have their sentences reduced based on the more lenient treatment that the Sentencing Guidelines now afford to crack offenders.  In each case, the defendant pled guilty pursuant to an agreement under Federal Rule of Criminal Procedure 11(c)(1)(C), which rule binds the court to the sentence described in the agreement if the court accepts the plea.  Under *United States v. Peveler*, 359 F.3d 369 (6th Cir. 2004), neither defendant is entitled to relief.

In November 2005, Antonio Goins was indicted for two counts of crack possession, one count of cocaine possession, and two counts of weapon possession.  He entered a plea agreement with the Government pursuant to Federal Rule of Criminal Procedure 11(c)(1)(C).  According to the terms of the agreement, Goins would plead guilty to the drug counts and one of the weapon counts, and the Government would move to dismiss the other weapon count.  The agreement specified that

the Government would agree to a sentence of fourteen years of imprisonment. The agreement also went on to discuss the applicability of the Guidelines and to specify how the various provisions would apply to Goins. The parties specified the exact quantity of crack and powder for which Goins would be held responsible and spelled out exactly how those amounts would result in a base offense level of 30. The parties agreed that Goins would receive a three-level reduction for acceptance of responsibility and would not receive a two-level increase for possession of a dangerous weapon. The parties also agreed that Goins was subject to a five-year mandatory minimum consecutive sentence for the remaining weapon offense. The agreement did not specify Goins's criminal history category, and the parties reserved the right to object to the court's determination of that category but agreed not to seek a departure under U.S.S.G. § 4A1.3 from that determination. The agreement also specified, consistent with the provisions of Rule 11(c)(1)(C), that if the court did not accept and comply with the terms of the agreement the agreement would be null and void and Goins could withdraw his plea of guilty.

Consistent with the agreement, the court sentenced Goins to a fourteen-year term of imprisonment. Because the court assigned Goins a criminal history category of II, the fourteen-year term exceeded the recommended Guidelines range by eleven months.

In January 2005, William Freeman was charged in a superseding indictment with one count of crack possession, one count of marijuana possession, and two counts of weapon possession. Like Goins, Freeman entered a plea agreement pursuant to Rule 11(c)(1)(C). The terms required Freeman to plead guilty to all the counts in the superseding indictment and the Government to agree to a

sentence of 106 months. Like Goins's agreement, Freeman's agreement specified the exact quantities of drugs for which he was accountable and that he would receive a three-level reduction for acceptance of responsibility. The agreement specified that Freeman's offense level after the three-level reduction would be 19 and that his criminal history category would be determined by the court, although the parties anticipated that Freeman's criminal history category would be IV. Like Goins's agreement, the agreement also specified that if the court did not accept and comply with the terms of the agreement, the agreement would be null and void and Freeman could withdraw his plea of guilty. Consistent with the agreement, the court sentenced Freeman to 106 months in prison.

After entry of both sentences, the Sentencing Commission amended the Guidelines to reduce the disparity in the treatment of crack and powder cocaine and made the amendment retroactive. *See* U.S.S.G. Appx. C, Amend. 706, *id.* § 1B1.10. Goins and Freeman sought to have their sentences reduced. In each case, the district court held that this circuit's precedent in *United States v. Peveler* precluded modification of a sentence imposed pursuant to a Rule 11(c)(1)(C) plea agreement. In Goins's case, the court added that the original sentence remained "sufficient but not greater than necessary to satisfy the purposes of sentencing." In Freeman's case, the court expressed ambivalence about the reasoning of *Peveler* but acknowledged it as binding precedent. Both defendants appealed.

The court's holding in *Peveler* precludes resentencing in each defendant's case. In *Peveler*, we held that the language of Rule 11(c)(1)(C) generally precludes a court from amending a sentence imposed pursuant to a plea under that provision, regardless of any subsequent change to the Guideline underlying the plea agreement. 359 F.3d at 379. Although *Peveler*'s holding does not

preclude reducing the sentence of a defendant who pled under Rule 11(c)(1)(C) where resentencing is necessary to avoid a miscarriage of justice, *see* 359 F.3d at 379 n.4, neither Goins nor Freeman falls within that exception.

Goins is not entitled to resentencing because the district court specifically reiterated the appropriateness of Goins's sentence in light of the amendment to the Guidelines. Due to some uncertainty about which criminal history category the court would assign, Goins's agreed-upon sentence ultimately exceeded the high end of the Guidelines range applicable at the time Goins was sentenced. Given a criminal history category of II, Goins's advisory range was 78 to 97 months, to run consecutively with a 60-month mandatory minimum sentence for possession of a firearm in furtherance of a drug trafficking crime. This resulted in a total Guidelines range of 138 to 157 months, below the agreed-upon 168 months. The amendment to the Guidelines reduced the advisory portion of the sentence to 63 to 78 months, resulting in a total range of 123 to 138 months. Goins's 14-year (168 month) sentence therefore exceeds the high end of the amended range by 30 months instead of 11. This disparity, however, does not by itself constitute a miscarriage of justice. In pleading guilty, Goins entered into a carefully constructed agreement in which the parties balanced many factors—including the charges to which Goins would plead guilty, the charges which the Government would move to dismiss, and the amount of drugs for which Goins would be held responsible. Having carefully bargained to reach this sentence, the parties acted under Rule 11(c)(1)(C) in order to restrict the ability of the court to upset the negotiated balance. Nothing in this

record suggests that declining to resentence Goins works any injustice. The district court did not err by holding Goins to the bargain he made. *Peveler*, 359 F.3d at 373.

Freeman also does not qualify for an exception under *Peveler*, but for different reasons. Unlike the court that considered Goins's motion for resentencing, the court considered Freeman's motion did not reiterate the appropriateness of Freeman's sentence. To the contrary, the court indicated that it felt constrained to deny Freeman's motion. However, the district court did not indicate that failing to resentence Freeman resulted in a miscarriage of justice. Indeed, *Peveler* would not have supported such a conclusion. Like the defendant in *Peveler*, Freeman's original 106-month sentence remained inside the Guidelines range for his crime, even after the amendment. *See id.* at 379 n. 4. At the time Freeman was sentenced, the Guidelines called for a sentence of 46 to 57 months, to run consecutively with a 60-month mandatory minimum sentence for possession of a firearm in furtherance of a drug trafficking crime, for a total of 106 to 117 months. Under the amended Guidelines, the range was 37 to 46 months, also to run consecutively with the 60-month sentence, for a total of 97 to 106 months. Freeman's 106-month sentence therefore fell at the bottom of the range before the amendment and at the top of the range after the amendment, a situation that the *Peveler* court contemplated and determined did not overcome the general prohibition on resentencing. *See id.* ("We note, however, that with the two-level deduction sought, Peveler's actual sentence is within the revised sentencing guideline range although the sentence is not at the low end of the revised guideline range as provided in the plea agreement.").

For the foregoing reasons, the orders denying resentencing are AFFIRMED.

**WHITE , Circuit Judge, concurring.** I agree that affirmance is mandated by our decision

in *United States v. Peveler*, 359 F.3d 369 (6th Cir. 2004), and thus concur. I write separately because

I believe Peveler construes 18 U.S.C. § 3582(c)(2) more narrowly than Congress intended.

Peveler's, and Goins' and Freeman's, sentence modification requests are based on 18 U.S.C.

§ 3582(c)(2), which provides:

> The court may not modify a term of imprisonment once it has been imposed except ... in the case of a defendant who has been sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered by the Sentencing Commission pursuant to 28 U.S.C. 994(o), upon motion of the defendant ... after considering the factors set forth in section 3553(a) ... if such a reduction is consistent with applicable policy statements issued by the Sentencing Commission.

18 U.S.C. § 3553(a) lists the following factors to be considered when imposing sentence:

> (1) the nature and circumstances of the offense and the history and characteristics of the defendant;
>
> (2) the need for the sentence imposed --
>
>> (A) to reflect the seriousness of the offense, to promote respect for the law, to provide just punishment for the offense;
>>
>> **(B)** to afford adequate deterrence to criminal conduct;
>>
>> **(C)** to protect the public from further crimes of the defendant; and
>
> * * *
>
> (5) any pertinent policy statement --
>
>> (A)  issued by the Sentencing Commission ...
>
> **(6)** the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; . . . .

United States Sentencing Commission Policy statement U.S.S.G. §1B1.10 addresses §3582(c)(2)

motions, stating:

> a) Authority.--
>> (1) In General.--In a case in which a defendant is serving a term of imprisonment, and the guideline range applicable to that defendant has subsequently been lowered as a result of an amendment to the Guidelines Manual listed in subsection (c) below, the court may reduce the defendant's term of imprisonment as provided by 18 U.S.C. 3582(c)(2). As required by 18 U.S.C. 3582(c)(2), any such reduction in the defendant's term of imprisonment shall be consistent with this policy statement.
>>
>> (2) Exclusions.--A reduction in the defendant's term of imprisonment is not consistent with this policy statement and therefore is not authorized under 18 U.S.C. 3582(c)(2) if--
>>
>>> (A)  None of the amendments listed in subsection (c) is applicable to the defendant; or
>>>
>>> (B) An amendment listed in subsection (c) does not have the effect of lowering the defendant's applicable guideline range.
>>
>> (3) Limitation.--Consistent with subsection (b), proceedings under 18 U.S.C. 3582(c)(2) and this policy statement do not constitute a full resentencing of the defendant.
>
> (b) Determination of Reduction in Term of Imprisonment.--
>
>> (1) In General.--In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the

defendant was sentenced and shall leave all other guideline application decisions unaffected.

Following the Tenth Circuit's decision in *United States v. Trujeque,* 100 F.3d 869 (10th Cir. 1996), which also involved a plea taken under Rule 11, the *Peveler* court explained:

The Tenth Circuit then ruled that the defendant's sentence was not actually calculated under the guidelines, but was determined by the Rule 11(e)(1)(C) plea agreement. *Id.* at 871. Thus, this retroactive amendment could not have affected the original sentence, and the Tenth Circuit directed a dismissal of the motion to modify. *Id.* Similarly, Peveler was sentenced pursuant to a Rule 11(e)(1)(C) plea agreement that binds both the parties and the court. The fact that the parties in this case specified an offense level under the sentencing guidelines rather than a fixed period of imprisonment like the parties in *Trujeque* is a distinction without a difference in terms of the court lacking the power to amend the plea agreement.

[*Peveler*, 359 F.3d at 378.] Like the Tenth Circuit, the *Peveler* court emphasized the binding nature of Rule 11(c)(1)(C) sentence agreements once the plea is accepted by the court:

Thus, absent an agreement of the parties, the plain language of the current version of Rule 11(e)(1)(C), now Rule 11(c)(1)(C), generally precludes the district court from altering the parties' agreed sentence under 18 U.S.C. § 3582(C). This conclusion applies despite the retroactivity of a subsequent amendment to a relevant guideline utilized to determine the defendant's sentence.

[359 F.3d at 378-79.][1]

---

[1]The relevant provision states:

(c) Plea Agreement Procedure.

(1) In General. An attorney for the government and the defendant's attorney, or the defendant when proceeding pro se, may discuss and reach a plea agreement. The court must not participate in these discussions. If the defendant pleads guilty or nolo contendere to either a charged offense or a lesser or related offense, the plea agreement may specify that an attorney for the government will:

There is indeed a tension between the various provisions bearing on the question. Sentences

imposed pursuant to Rule 11(c)(1) agreements are different in that usually the defendant has received

concessions in exchange for a plea of guilty or nolo contendere. These concessions may include the

dismissal of charges, or charge reductions that affect the applicable Guidelines range. In such cases,

the government may have made the concessions relying, at least in part, on the knowledge that the

defendant will be sentenced to a certain minimum term. On the other hand, Rule 11(c)(1)

negotiations and the resulting agreements are informed and shaped by the existing Guidelines. The

parties evaluate their gains and concessions using the Guidelines as their yardstick.

With this context in mind, I look to the language of 18 U.S.C. § 3582(c)(2). The statute

authorizes a modification of sentence where the defendant has been sentenced to a term of

imprisonment "*based on* a sentencing range that has subsequently been lowered by the Sentencing

Commission." [Emphasis added.] The *Peveler* court concluded that a sentence imposed pursuant

---

> (A) not bring, or will move to dismiss, other charges;
> * * *
>
> (C) agree that a specific sentence or sentencing range
> is the appropriate disposition of the case, or that a
> particular provision of the Sentencing Guidelines, or
> policy statement, or sentencing factor does or does not
> apply (such a recommendation or request binds the
> court once the court accepts the plea agreement).

Fed. R. Crim. P. 11(c)(1)(C).

to a Rule 11(c)(1)(C) agreement is based on the agreement, not the Guidelines, and thus is not encompassed by the statute. This is an overly narrow interpretation of the statute.

The statute does not address the issue directly; although it lists certain exceptions, a sentence imposed pursuant to a plea agreement is not one of them. The statutory language – "sentenced to a term of imprisonment based on a sentencing range that has subsequently been lowered" – can be fairly understood to support either result. One can say that a Rule 11(c)(1)(C) sentence is based on the plea agreement, not the Guidelines; or one can say that the sentence is imposed pursuant to the agreement but is based on many factors, including the agreement and the Guidelines.

Nothing in the statute or policy statements supports the conclusion that Congress intended to exclude sentences that were based on the Guidelines, but imposed pursuant to Rule 11(c)(1)(C) plea agreements. Congress obligated the Sentencing Commission to review and revise the Guidelines periodically, 28 U.S.C. 994(o), and gave the courts explicit authority to amend sentences that were based on Guideline ranges that were subsequently lowered by the Commission, provided the sentence reduction is consistent with policy statements issued by the Commission. Acting under Congressional authority, the Sentencing Commission has determined that certain amendments to the Guidelines, including the revision to the 100-to-1 powder/crack cocaine ratio, should be applied retroactively, so that sentences based on Guidelines and ranges that have subsequently been reevaluated and rejected in favor of new Guidelines and ranges can be adjusted if necessary to achieve the goals of sentencing as expressed by Congress in § 3553(a). Given that Rule 11(c)(1)(C) sentences are negotiated in the context of the same Guidelines as non-negotiated sentences, and are

affected by the same Guidelines later rejected and amended by the Commission, there is no reason to believe Congress intended to single these sentences out and deny § 3582(c)(2) relief to defendants who pleaded guilty pursuant to Rule 11(c)(1)(C) agreements. The essential feature of these sentences is the same whether imposed solely in the exercise of the court's discretion, or based on a Rule 11(c)(1)(C) agreement – the sentences are based on a Guidelines range that was subsequently lowered by the Commission under circumstances that led the Commission to determine that a reduced sentence might be appropriate.

*Peveler*, and the cases on which it relies, hold that a district court is without authority to modify a sentence imposed pursuant to a Rule 11(c)(1)(C) agreement.[2] But a district court is

---

[2]I observe that the language of the application note to U.S.S.G. § 1B1.10 found significant by the *Peveler* Court has been amended. When *Peveler* was decided the note read:

> In determining whether, and to what extent, a reduction in the term of imprisonment is warranted for a defendant eligible for consideration under 18 U.S.C. § 3582(c)(2), **the court should consider the term of imprisonment that it would have imposed had the amendment(s) to the guidelines listed in subsection (c) been in effect at the time the defendant was sentenced** ... [Emphasis added.]

This language was seen as supporting the view that Rule 11(c)(1)(C) sentences are not within the purview of §3582(c)(2) because the court would have been bound to impose the same agreed-upon sentence without regard to the Guidelines. Section 1B1.10(b)(1) now reads:

> In determining whether, and to what extent, a reduction in the defendant's term of imprisonment under 18 U.S.C. 3582(c)(2) and this policy statement is warranted, the court shall determine the amended guideline range that would have been applicable to the defendant if the amendment(s) to the guidelines listed in subsection (c) had been in effect at the time the defendant was sentenced. In making such determination, the court shall substitute only the amendments listed in subsection (c) for the corresponding guideline provisions that were applied when the defendant was sentenced and shall leave all other guideline application decisions unaffected.

without authority to modify any sentence, unless specifically authorized to do so by statute. 18

U.S.C. §3582(c). Section 3582(c) grants the authority to modify a sentence under certain

circumstances, including where the sentence is based on a Guideline range that has been lowered.

If section § 3582(c)(2) is applicable, it affords district courts the authority to modify Rule 11(c)(1)(C)

sentences.

We should be further guided by recognition that§ 3582(c) sets forth other circumstances in

which a district court is authorized to modify a sentence. Section 3582(c)(1) grants authority to

modify

> **(1)** in any case--
>> **(A)** the court, upon motion of the Director of the Bureau of Prisons,
>> may reduce the term of imprisonment (and may impose a term of
>> probation or supervised release with or without conditions that does
>> not exceed the unserved portion of the original term of
>> imprisonment), after considering the factors set forth in section
>> 3553(a) to the extent that they are applicable, if it finds that--
>>> **(i)** extraordinary and compelling reasons warrant such a
>> reduction; or
>>> **(ii)** the defendant is at least 70 years of age, has served at least
>> 30 years in prison, pursuant to a sentence imposed under section
>> 3559(c), for the offense or offenses for which the defendant is
>> currently imprisoned, and a determination has been made by the
>> Director of the Bureau of Prisons that the defendant is not a danger
>> to the safety of any other person or the community, as provided under
>> section 3142(g);

---

Thus, the policy now refers to the Guidelines range that would have been applicable, rather than the
sentence that would have been imposed.

and that such a reduction is consistent with applicable policy statements issued by the Sentencing Commission; . . . .

If a district court lacks authority to modify a Rule 11(c)(1)(C) sentence under § 3582(c)(2) because of the binding nature of such an agreement, it should likewise lack authority to modify such a sentence upon the Director of the Bureau of Prisons' motion under § 3582(c)(1). In either case, the Government and the defendant bargained for a sentence that became binding on the court when the agreement was accepted. Yet, § 3582(c)(1) clearly contemplates that district courts will entertain such motions and have authority to grant them. Thus, Congress did not regard the binding nature of Rule 11(c)(1)(C) sentence agreements as trumping Congressional intent to permit sentence modification in certain limited circumstances, and any argument that § 3582(c)(2) does not encompass Rule 11(c)(1)(C) sentences must be based on the specific language of § 3582(c)(2), which, as discussed above, does not support such a limitation.

Further, although a Rule 11(c)(1)(C) sentence agreement is an agreement between the Government and the defendant, it is not binding on the court unless accepted; and the court is required to exercise its independent judicial judgment in deciding whether to accept the agreement. That discretion is exercised in the context of the Guidelines. It is not simply a matter of contract.[3] Section 6B1.2 of the Guidelines Policy Statement makes this clear:

---

[3]In *United States v. Cobb*, 584 F.3d 979 (10th Cir. 2009), the majority criticized *Trujeque*'s reliance on contract principles as misguided. *See, infra,* at pp. 9-10.

**§ 6B1.2. Standards for Acceptance of Plea Agreements (Policy Statement)**

\* \* \*

      **c)** In the case of a plea agreement that includes a specific sentence (Rule 11(c)(1)(C)), the court may accept the agreement if the court is satisfied either that:
      **(1)** the agreed sentence is within the applicable guideline range; or

      **(2)**(A) the agreed sentence departs from the applicable guideline range for justifiable reasons; and (B) those reasons are specifically set forth in writing in the statement of reasons or judgment and commitment order.

To be sure, the government should not be forced to grant concessions against its will, and if a concession was given in reliance on a sentence of a certain length, without regard to the Guidelines range, the policies supporting Rule 11(c)(1)(C) may have been violated. In such a case, however, the district court is free to conclude that the sentence was not based on a Guidelines range that was subsequently amended. District judges are certainly capable of making these distinctions and identifying those Rule 11(c)(1)(C) sentences that were based on Guideline ranges that were subsequently modified, and those that were not. In many cases, the role of the Guidelines will be apparent from the agreement itself, as where the agreement sets forth certain scoring concessions and provides for a sentence within a particular area (low, center, high) of the Guidelines range. When faced with a § 3582(2) motion in the context of a Rule 11(c)(1)(C) agreement, the court should be able to evaluate the agreement and the surrounding circumstances to determine whether the sentence was based at least in part on a subsequently reduced Guidelines range, and if so, whether and to what extent it should be reduced.

Lastly, the Tenth Circuit has recently distinguished and narrowed *Trujeque*. In *United States v. Cobb*, 584 F.3d 979 (10th Cir. 2009), the majority distinguished *Trujeque* as involving a Rule 11 sentence that was not based on the Guidelines, because the agreed-upon term was not within the Guidelines range. Cobb's sentence, however, "was tied to the guidelines at every step," Slip op. at 3. The *Cobb* majority retreated from *Trujeque*:

> We agree with the Fourth Circuit [in *United States v. Dews*, 551 F.3d 204 (4th Cir. 2008), *rehearing en banc granted, opinion vacated* Feb. 20, 2009] that nothing in the language of § 3582(c)(2) or in the language of Rule 11 precludes a defendant who pleads guilty under Rule 11 from later benefitting from a favorable retroactive guideline amendment. *But see, e.g., United States v. Peveler,* 359 F.3d 369, 379 (6th Cir. 2004) (concluding the language of Rule 11 precludes application of § 3582(c)); *United States v. Scurlark*, 560 F.3d 839, 842 (8th Cir.2009) (same). Implicitly, in *Trujeque* and our later cases relying upon it, we have imported contract analysis into our application and interpretation of § 3582. But we lack statutory or guideline authority for doing so. We are construing a statute, not common law. Importing contract ideas into our assessment of § 3582 would hinder adequate consideration of Defendant's perfectly logical analysis and misdirect our focus from the reasonable interpretation that Congress did not intend to keep negotiated plea agreements (even those specifying a particular sentence within a properly computed guideline range) from the reach of § 3582. In § 3582(c)(2), Congress merely used the language "based upon a qualifying sentencing range." The statute imposes no requirement that to be based on a qualifying range, the sentence be a non-negotiated, "run-of-the-mill" guideline sentence. Instead, it generally allows for reductions of sentences which are based in any way on a qualifying range. No other connection is required.
>
> With § 3582 and the authority Congress gave to the Sentencing Commission under 28 U.S.C. § 994(o), Congress intended, in part, to reduce unwarranted disparity in sentencing. *See* 28 U.S.C. § 991(b)(1)(B). Section 3582 was enacted in an environment in which an overwhelming number of cases were resolved by plea agreements, *see* Ronald F. Wright, *Trial Distortion and the End of Innocence in Federal Criminal Justice,* 154 U. Pa. L.Rev. 79, 91 fig. 1 (2005), as they still are today, *see* United States Sentencing Commission, *Sourcebook of Federal Sentencing Statistics,* fig. C (2008). Barring defendants who enter Rule 11 pleas from pursuing

sentence modifications under § 3582 tends to undermine this general pattern and ignore the pervasiveness of pleas. It also undervalues the role of the guidelines in determining the negotiable range in plea agreements. It is simply unrealistic to think that the applicable guideline range is not a major factor (if not *the* major factor) in reaching a stipulated sentence. If we categorically removed Rule 11 pleas from the reach of § 3582, it would perpetuate the very disparity § 3582 and the retroactive application of Amendment 706 were meant to correct. Such an approach would leave defendants who pled guilty before the effective date of the amendment with higher sentences than those who pled guilty afterward because the post-amendment pleas and plea negotiations are based on the lower, modified sentencing ranges. Therefore, all defendants who entered Rule 11 pleas before the effective date of the amendment would be left serving greater sentences on the now-rejected grounds of the 100-to-1 powder-to-crack cocaine ratio.

Ultimately, we hold truer to the language of § 3582(c)(2) by concluding the district court has authority to reduce sentences imposed pursuant to Rule 11 pleas where, as here, the sentence was based at least in part on the then-applicable sentencing range.

[*Cobb*, 584 F.3d at 984-85.]

Were it not for *Peveler*, I would remand in both cases[4] with instructions to determine whether the original sentence was based on the Guidelines and, if so, to consider whether a reduced sentence is appropriate.

---

[4]On remand, Goins may find it difficult to make a threshold showing in light of the fact that the agreed- on sentence was above the guidelines.